UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-20008-CR-MORENO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

KEVIN REBOLLEDO,

    Defendant.
    _____/

**DEFENDANT'S SENTENCING MEMORANDUM
AND REQUEST FOR DOWNWARD VARIANCE**

The Defendant, Kevin Rebolledo, through undersigned counsel, respectfully files this Sentencing Memorandum and Request for Downward Variance. In support of his request, Mr. Rebolledo states as follows:

**U.S.S.G. § 2G2.2: THE CHILD PORNOGRAPHY GUIDELINE**

The guidelines for child pornography cases are inflated and out of date. Indeed, in the 2012 U.S. Sentencing Commission's Report to Congress regarding federal child pornography offenses, the Commission itself noted that these guidelines "are flawed and in need of repair." *United States v. Mallatt*, 2013 WL 6196946 (D. Neb. Nov. 27, 2013) (citing USSC, Report to Congress: Federal Child Pornography Offenses 320-26 (Dec. 2012) ("USSC Report")).[1] Specifically, "the current non-production guideline

---

[1] The Department of Justice, too, has similar concerns regarding these guidelines. In 2013, the DOJ submitted a letter to the Sentencing Commission agreeing with an earlier Commission report suggesting that § 2G2.2 "may not

1

warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behavior as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior. The current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application." *See* USSC Report, Chap. 12, p. 331.[2]

> 1. <u>The Sentencing Commission admits that there are unwarranted and unfounded disparities in cases in which defendants are sentenced for non-production child pornography offenses.</u>

Chapter 8 of the Report discusses in detail one of the major guideline problems that is present in Mr. Rebolledo's case: the typical offense conduct now triggers multiple guideline enhancements and exposes most defendants to substantial penalty ranges. The result is that the guidelines fail to distinguish meaningfully among offenders in terms of culpability and dangerousness. (USSC Report, Chap. 8, p. 207); *see United States v. Kelly*, 868 F.Supp.2d 1202, 1206 (D. N.M. 2012) (explaining that § 2G2.2 "creates no distinction between consumption of child pornography and the far worse crimes of producing or mass-distributing it").

According to the Commission's Report, because the possession and distribution statutes trigger different base offense levels in the guidelines, they "provide substantially different ranges for two groups of defendants who engaged in

---

accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness." *See Mallatt*, 2013 WL 6196946, *11.
  [2] Available at *http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child _Pornography_Offenses/index.cfm.*

2

substantially similar conduct found by sentencing courts." (USSC Report, Chap. 8, pp. 215-216.) Because the difference between the guidelines is not rooted in any data or empirical evidence, this unwarranted disparity should be corrected at sentencing.

For example, in Paragraph 38 of Mr. Rebolledo's Presentence Investigation Report ("PSI"), a base offense level of 22 is assigned for his distribution offense (a 4-level increase over a mere possession offense); in paragraph 40, he receives an additional 2-level enhancement for distribution under § 2G2.2(b)(3). Mr. Rebolledo pled to one count of distribution, which is commonly the proffered reason for punishing non-production defendants more severely than those who are convicted only of possession. But the Report debunks that claim.

The Commission conducted a multi-year study of federal child pornography cases, and focused especially on disparities resulting from charging and plea decisions. Over the study period, the Commission identified a set of cases involving comparable distribution conduct, which resulted in a 2-level increase to the offense level, pursuant to § 2G2.2(b)(3)(F). (USSC Report, Chap. 8, pp. 215-216.) One set of defendants within this group, however, was convicted of possession of child pornography, while the second set was convicted of distribution. Because the two groups were convicted of different statutory offenses, their respective guideline ranges "differed considerably as a result of different 'starting points,' under the guidelines and different statutory ranges of imprisonment." (USSC Report, Chap. 8 p. 215.) Those convicted of possession faced a statutory range of 0 to 10 years imprisonment and a guideline range of 97 to 120 months, while those convicted of

3

distribution faced a statutory range of 5 to 20 years imprisonment and a guideline range of 151 to 188 months.[3] Both the applicable statutory penalties and the guidelines vary significantly for these two sets of defendants who "engaged in substantially similar conduct as found by sentencing courts," based *not* on differences in offense conduct but differences in the way the cases were charged or pled. (USSC Report, Chap. 8, pp. 215-216.)

Given that distribution conduct is present in the typical possession case, the guidelines' disparity, as reflected in Mr. Rebolledo's guideline computation, is unwarranted. The empirical evidence supports a downward variance on this basis, and numerous courts have held the same. *See, e.g.*, *United States v. Brasfield*, 2011 WL 3844181, at *3 (E.D. Wis. Aug. 29, 2011) (explaining that the defendant's guideline range "derived from the application of U.S.S.G. § 2G2.2, a seriously flawed provision worthy of little deference. Courts have explained these flaws in detail," and citing numerous cases in support); *United States v. Stone,* 575 F.3d 83, 97 (1st Cir.2009) ("[W]e wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary. As described in the body of this opinion, first-offender sentences of this duration are usually reserved for crimes of violence and the like.").

    2.    <u>Guidelines for non-production offenses are higher than the mean guideline minimum for three other sex offense types that involve actual or attempted sexual contact with a minor.</u>

---

[3] These guideline ranges are for defendants in Criminal History Category I, as is Mr. Rebolledo.

4

To illustrate the point that the non-production guidelines are disproportionately high, the Commission conducted a comparative proportionality analysis between the mean guidelines for § 2G2.2 and other federal sex offenses that involve actual or attempted sexual contact with a minor. (USSC Report, Chap. 6, p. 136.) The Report found that the mean guideline for a § 2G2.2 case is *higher* than the mean guideline minimum for the following three other sex offense types that involve minors:

(1) traveling to engage in sexual contact with a minor 12 years old or older (USSG § 2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor));
(2)  abusive sexual contact with a minor (*e.g.*, sexual fondling) (§ 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact)); and
(3) statutory rape of a minor under 16 years of age (§ 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts)).

(USSC Report, Chap. 6, pp. 135-136.) Mr. Rebolledo's case does not involve the enticement of minors or an attempt to have physical contact with minors, a fact that should be considered in imposing a below-guidelines sentence in this case. Indeed, Mr. Rebolledo has never engaged in any sexually exploitative, abusive, or predatory conduct.

> 3. <u>Several enhancements under § 2G2.2 and are no longer a meaningful way to distinguish or punish more egregious conduct.</u>

In addition to the enhancement for distribution, Mr. Rebolledo also received enhancements for images depicting a prepubescent minor and for use of a computer.

5

(PSI ¶¶ 39, 42.) These enhancements, as shown in the following figure taken from the Report, now apply to "virtually all non-production offenders," thus not providing any meaningful distinction or warranting enhanced punishment. *See United States v. Kelly*, 868 F.Supp.2d 1202, 1208 (D. N.M. 2012) (explaining that several of the enhancements applicable in this case are "essentially inherent to the crime itself" and are applied in virtually all child pornography cases).



(USSC Report, p. 139.)

Mr. Rebolledo also received an enhancement for material that portrays sadomasochistic images or sexual abuse or exploitation of an infant or toddler, as well as the maximum enhancement for number of images. (PSI ¶¶ 41, 43.) According to the Report, there has been a steady increase in the application of enhancements related to such images: in 2005, the sadomasochistic/infant or toddler enhancement applied in approximately 60 percent of cases, and by 2010, it applied in nearly 75 percent of cases. (USSC Report, Chap. 6, p. 141.) Additionally, in fiscal year 2010, 96.9 percent of child pornography defendants received an enhancement pursuant to

§ 2G2.2(b)(7) based on the number of images that they possessed, and 69.6 percent received the maximum 5-level enhancement based on possession of 600 or more images. (*Id.*) Again, this empirical data demonstrates that the guidelines are generating arbitrarily high ranges that do not differentiate among conduct and offenders.

In sum, the application of these enhancements do not demonstrate that Mr. Rebolledo is more culpable, more dangerous, or more deserving of punishment than the average non-production defendant, despite the fact that, combined, these enhancements add a total of 15 offense levels (which amounts to over ten years in custody) to his guideline computation.

   4. <u>Courts in this district recognize that the guidelines in non-production cases do not meet the purposes of punishment and routinely vary downward in cases presenting similar or worse facts than those in Mr. Rebolledo's case.</u>

In a similar case, *United States v. Carlo Demarco,* Case No. 10-cr-20261-KMM, the defendant pled guilty to one count of distribution of child pornography. His PSI calculated his sentencing guidelines to be 151-188 months, and the defendant requested a downward variance. Over the Government's objection, the court imposed a sentence of 60 months. The facts set forth in that defendant's proffer established that the defendant was using a publicly available file sharing program; and a forensic examination of that computer revealed at least 600 images and at least 101 videos of prepubescent children engaging in sexually explicit conduct, including oral sex and penetration. Case No. 10-cr-20261-KMM (D.E. 46). Moreover, that defendant had his software configured to allow him to actively monitor not just which files of his were

7

being downloaded, but who was downloading his files. (*Id.*).

In a case involving more than simple peer-to-peer distribution, *United States v. Diego Matrajt,* Case No. 12-cr-20343-RNS, the defendant pled guilty to one count of distribution and two counts of possession of child pornography, despite all indications that he was producing child pornography. (D.E. 40.) His PSI calculated his guidelines to be 210-262 months, the defendant requested a sentence of 60 months, and over the Government's objection, the court imposed a sentence of 120 months as to each count to run concurrently. (*Id.*) That defendant not only had his computers password protected and encrypted, but he also had webcams secretly set up in his home, where he conducted photo shoots of children and captured videos of those children naked in his home. He possessed 50 homemade videos of this nature, in addition to at least another 40 sexually explicit videos of minors. (*Id.*) Matrajt, who had numerous real children in his home and videoed them for his own sexual gratification, in addition to possessing and sharing sexually explicit videos of minors, received a sentence of 120 months. The facts of Mr. Rebolledo's case are nowhere near as egregious as those in the *Matrajt* case and do not warrant a sentence higher than or equal to Matrajt's sentence.

In *United States v. Shawn Beauvais,* Case No. 12-cr-60067-RNS, the defendant, who pled to distribution, was found to have possessed over 4,000 pictures and over 1,700 videos, many of which involved infants and toddlers subjected to sadomasochism. (DE 24.) The PSI calculated his guideline range to be 151-188, the defendant requested a 60-month sentence, and the Government, recognizing the

8

defendant's medical needs, requested a sentence of 121 months. (DE: 31.) The Court imposed a sentence of 75 months. (DE: 36.) In Mr. Rebolledo's case, the offense involved far fewer images and videos. (PSI ¶ 10.) The relative number of images and videos supports a sentence in the instant case closer to the 60-month mandatory minimum.

In the case of *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009), Judge King rejected the recommended sentencing range and sentenced the defendant to the statutory minimum term of 60 months. In rejecting the advisory guideline range of 210-262 months, the court noted that the guidelines are entitled to deference when the Sentencing Commission produces them in accordance with their institutional role and where the guidelines are the result of a study of empirical data; however, the court concluded that little deference is owed to the guideline for child pornography cases since these guidelines did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis:

> [T]he guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes.... Between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months...[T]his increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing...These amendments [increasing sentence ranges] destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters.

*Id*. at 1301 (quoting *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008)). Also, the court discussed at length that due to arbitrary upward increases

9

in the base offense levels for child pornography and the near-automatic application of numerous specific offense enhancements (*i.e.*, distribution, use of a computer, prepubescent victims and number of images), rarely, if ever, will a defendant score at the low end of the statutory range.

Many other courts in this district have varied downward in distribution and receipt cases. *See, e.g.*, *United States v. Harrison Barrus*, Case No. 18-cr-60255-RNS (court varied down to 75 months from guideline range of 151-188 months), *United States v. John Jerrold Collier*, Case No. 18-cr-20095-PCH (court imposed sentence of 80 months in case involving over 20,000 photos and more than 500 videos, where defendant pled to receipt but factual proffer established distribution); *United States v. Mael Yves Crespin*, Case No. 18-cr-20250-KMW (court imposed below-guideline sentence of 65 months, where defendant joined online chat group for purpose of exchanging child pornography); *United States v. Gregory Rojas,* Case No. 15-cr-20997-DPG (court varied from advisory range of 151-188 to mandatory minimum of 60 months); *United States v. Taylor Lyon*, Case No. 15-cr-20893-UU (court varied from advisory range of 97 to 121 months to the mandatory minimum of 60 months); *United States v. Matthew Clark*, Case No. 11-cr-14064-DLG (in case involving peer-to-peer sharing of files, the Court varied from the advisory guideline range of 151-188 months to impose a sentence of 66 months); *United States v. Nat Lane*, Case No. 10-cr-14061-JEM (Court varied from 151 months to a sentence of 108 months); *United States v. Mehrdad Sarlak*, Case No. 11-cr-20078-JLK (Court varied from 151-188 months to a sentence of 60 months). Such local sentencing trends mirror a larger

10

national sentencing trend in these cases:



(USSC Report, Chap. 6, p. 135.). Sentencing Mr. Rebolledo to 60 months, therefore, will reflect a well-recognized need to correct the guidelines' unwarranted sentencing disparity.

### THE HISTORY AND CHARACTERISTICS OF MR. REBOLLEDO

More than mere disagreement with the efficacy of § 2G2.2, however, warrants varying down from the guideline range in this case, given Mr. Rebolledo's personal "history and characteristics." 18 U.S.C. § 3553(a)(1). As a preliminary matter, there is not the slightest suggestion that Mr. Rebolledo "possessed child pornography in order to entice a child, had any improper contact with children, photographed minors engaged in sexual conduct, or made attempts to contact a child." *Mallatt*, 2013 WL 6196946, at *13. He did not benefit financially from his actions. His "collecting

11

behavior" was hardly sophisticated. He cooperated with law enforcement immediately and in exceptional ways that will be described further in a separate, sealed filing. And he has since expressed sincere and deep remorse for his conduct. He has not otherwise been arrested—much less convicted—for any criminal offense. And importantly, Mr. Rebolledo himself was the subject of numerous, repeated incidents of sexual abuse as a young child, which undoubtedly "contributed to his actions and must be considered in determining his culpability." *Mallatt*, 2013 WL 6196946 at *14.

Mr. Rebolledo absolutely recognizes the severe harms of his conduct in this case, and he is truly sorry for what he has done. As outlined in the report summarizing the therapy he received at Anaga Psychotherapy Center through Pretrial Services during his time on pretrial release, Mr. Rebolledo's therapist noted that his sessions were "characterized by his honesty," and explained that Mr. Rebolledo showed "remorse" for his conduct during his sessions and "took responsibility for his offense." She also noted that Mr. Rebolledo understood that "by accepting the consequences of his actions he was beginning to make amends recognizing how his offense had affected his family, the victims and society." This report will be provided to the Court separately under seal.

Indeed, Mr. Rebolledo understands this cycle of abuse and trauma on a deeply personal level, as he himself was sexually abused throughout his childhood. Prior to his pretrial detention, Mr. Rebolledo underwent a psychological evaluation conducted by Pedro A. Sáez, Ph.D. As Dr. Sáez explains in his report, which will also be provided

to the Court separately under seal, Mr. Rebolledo was victimized as a child by three separate individuals—starting at the extremely young age of four—until he was 15 years old. The first perpetrator victimized him for eight continuous years, forcing him to perform sexual acts and threatening members of his family if he did not comply. He remembers as a young child, for example, being told that if he did not do as his first abuser had ordered, the abuser would "drown [his] grandmother." (Sáez Report at 3). These experiences have led to an adult diagnosis of Post-Traumatic Stress Disorder (PTSD); as Dr. Sáez explains, sexual trauma and abuse is a "significant risk factor" for PTSD. *Id*. at 8-9. Today, Mr. Rebolledo has "severe symptoms of depression and severe anxiety" and "dissociative experiences" that can be traced to his "history of trauma from past sexual abuse." *Id*. at 7.

The relationship between child sexual abuse and psychopathologies such as PTSD is well documented; research has also linked a history of child sexual abuse with heightened, high-risk, or deleterious sexual behaviors or other sexual pathologies.[4] In Mr. Rebolledo's case, he turned to child pornography because his sexual identity had become deeply entangled in his own experiences of childhood sexual abuse; he clearly recognizes today how misguided and harmful such conduct is, and he has begun to process and accept his childhood trauma in healthier and much less damaging ways. For example, the therapy he received at Anaga through Pretrial Services was the first time he has ever received psychological treatment, or

---

[4] *See, e.g.*, Jennie G. Noll, "Child Sexual Abuse as a Unique Risk Factor for the Development of Psychopathology: The Compounded Convergence of Mechanisms," 17 *Annual Review of Clinical Psychology* 439 (May 2021).

had the opportunity to begin to process these experiences in a professional environment. Indeed, his therapist noted that Mr. Rebolledo was earnestly approaching his sessions as an opportunity to "learn[] healthy coping skills"; this is just the kind of counseling that Dr. Sáez recommended to treat such "symptoms of PTSD and mood dysregulation, and process past traumatic experiences." (Sáez Report at 9). As a condition of his supervised release, Mr. Rebolledo will certainly continue to benefit from such psychological treatment after his release from prison; this should also assuage any concerns about recidivism.

Even more importantly for the Court's concerns regarding deterrence, "empirical testing disproves the fear that the typical child pornography defendant will go on to molest children." *Kelly*, 868 F.Supp.2d at 1208 (citation omitted). And nothing in Mr. Rebolledo's background suggests that he will graduate to more serious behavior, especially now that he has begun to receive treatment for his own past trauma. His experience in therapy has been incredibly meaningful for him, and his commitment to continuing treatment will further deter any risk of recidivism.

Mr. Rebolledo also now feels such sincere remorse for his actions because they were so out of character for someone who has lived an otherwise wholly law-abiding life, as he has. It is crucial to note that Mr. Rebolledo has no prior criminal convictions or arrests; prior to this case, he had never spent a night in jail. To the contrary, as noted in the numerous letters of support submitted by his employers and managers at work and attached here as an Exhibit, Mr. Rebolledo is an industrious and reliable employee, with a positive and enthusiastic presence on the job. Further,

his family continues to support him and has stood by him despite the difficult nature of the charges he is facing. The support of his family will benefit Mr. Rebolledo during the period of his incarceration and will also help him readjust to life following his release.

Finally, as will be discussed separately in a sealed filing and at the sentencing hearing, a significant downward variance is appropriate here given Mr. Rebolledo's cooperation with law enforcement.

Due to the mandatory minimum here, Mr. Rebolledo is required to serve a lengthy sentence in this case. He will then be subject to an extended period of supervised release. He will be required to register as a sex offender. And he will inevitably "confront intense stigmatization," *United States v. Munoz*, 2012 WL 5351750, *5 (D. Minn. Oct. 30, 2012), both in custody and out. His will thus be a lifetime of "collateral consequences which serve to deter future criminal conduct." *United States v. R.V.*, 157 F. Supp. 3d 207, 257 (E.D.N.Y. 2016). A sentence within the guideline range would simply be far longer than is necessary to punish him for his crime, to deter future conduct, or to protect the public. Rather, a sentence of the mandatory minimum is sufficient but not greater than necessary to achieve the goals set forth in 3553(a).

## CONCLUSION

The offense conduct in Mr. Rebolledo's case is that of a typical non-production case. As such, a significant variance from the guideline range is reasonable, in recognition of the empirical data that reflect the unwarranted disparity in the

guidelines and local and national sentencing trends. Mr. Rebolledo accepted responsibility for his actions from the time law enforcement first confronted him. Mr. Rebolledo's other personal characteristics, including his lack of criminal history, his history of personal trauma and sexual abuse, and his cooperation with the government, all support a sentence of the mandatory minimum.

WHEREFORE, the Defendant, Kevin Rebolledo, respectfully requests that this Court impose a sentence of below the advisory guideline range, at the applicable mandatory minimum.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:  */s/Kate Mollison*
Kate Mollison
Assistant Federal Public Defender
Florida Special A No. A5502482
150 W. Flagler Street, Suite 1700
Miami, Florida  33130
Tel:  305-530-7000
E-Mail Address:  kate_mollison@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on August 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Kate Mollison*
Kate Mollison